46385, 46386. A-1 BONDING SERVICE, INC. v. HUNTER (two cases).

ARGUED JUNE 28, 1971—DECIDED NOVEMBER 23, 1971—
REHEARING DENIED DECEMBER 13, 1971—

*Webb, Parker, Young & Ferguson, Paul Webb, Jr., John Tye Ferguson, Turner Paschal,* for appellant.

*Larry Cohran,* for appellee.

DEEN, Judge. ■ When the case was here before on motion to dismiss for failure to state a claim (*Hunter v. A-1 Bonding Service,* 118 Ga. App. 498, 501 (164 SE2d 246)) it was held, as to the employees: "That the purpose of their return may have been partly personal, resulting from an argument that had developed, would not bar a recovery if the purpose was also to accomplish the mission on which they had been sent out. To bar a recovery it must appear that the mission was purely personal, disassociated from any business of the master." It was also pointed out (p. 500) that an allegation that the employees left plaintiff's home, "armed themselves with pistols and returned for the purpose of killing plaintiff's husband" might in itself justify an adverse verdict as constituting an admission that the employees were engaged in a personal mission "unless it has been withdrawn, or the evidence clearly demonstrates the contrary to be true." On the return of the case this allegation was in fact stricken. After being stricken it no longer amounted to an admission in judicio that these employees

(who are not sued in this action) were engaged in a personal mission so as to bar the action against the employer. See *Iteld v. Karp,* 85 Ga. App. 835 (70 SE2d 378). Further, the stipulation by the defendant that Thompson and Bowers were its employees and were engaged in the duties of their employment in going to the Hunter house to look for Willie B. Hunter does not amount to an admission that they were within the course and duties of their employment in killing his brother. This is a question of evidence not controlled by the pleadings and stipulations in this case.

■ The testimony of the bondsmen is that as they stopped their car near the Hunter home the deceased approached with a pistol in his right hand and a shotgun in his left hand, said "I am going to kill you," stuck the pistol "at" or "in" the car and, before he fired it, was shot by Thompson who picked up and fired a gun lying on the seat between him and Bowers. Hunter fell; Bowers, who had apparently gotten out of the car, jumped in and they backed the car to the corner where the police were sent for. They all returned to the scene and found a pistol holster lying under the deceased but neither a pistol nor a shotgun. The appellant contends that these weapons were removed in the absence of Thompson and Bowers and that, since the latter were the only eyewitnesses to the shooting, a verdict for the defendant is demanded under the ruling in *Hanna v. Estridge,* 59 Ga. App. 182, 184 (200 SE 174): "Where the killer is connected with the homicide by his statements alone a jury must accept the entire statement if it shows complete justification." We do not agree that the employees are connected with this homicide by their statement alone. Although no one else actually saw Thompson pull the trigger, a number of people arrived at the scene almost immediately and before they had left in search of the police. One of them, a young daughter, whose testimony at a former hearing was admitted in evidence by stipulation, said that she saw Thompson shoot her father and pointed him out as the man who did it; she also said that her daddy had a pistol in a holster while painting the house before their arrival, and

that she saw a shotgun lying beside him after he was shot. Her testimony, while in some respects favorable to the defendant's case, is also sufficient to identify Thompson as the person who shot her father or at the very least as the man she recognized in the automobile immediately after the shot was fired. Others who arrived on the scene testified in a manner which corroborated this statement. Thompson immediately told a bystander he had shot Hunter and to send for the police, a statement which was a part of the res gestae of the occurrence. Accordingly, we do not have a situation where the only evidence pointing to the perpetrator of a homicide is the statement and accompanying explanation of the actor, but a situation where the issue is not identity of the person but the reason which prompted him to act.

■ Nor is it ground for a directed verdict in favor of the defendant that the plaintiff's attorney said in his concluding argument: "Bowers and Thompson went back down there for one purpose only and they accomplished that purpose," even though, had the jury believed this statement literally, they would have been bound to find for the defendant if they believed Bowers and Thompson returned for the sole purpose of killing Hunter, and that such act had not been authorized by the defendant. *Chapman v. State,* 90 Ga. App. 564 (83 SE2d 572), cited by the appellant, is not authority to the contrary. It holds merely that a stipulation of the truth of certain proposed evidence by the attorney for the objecting party will render the admission of the evidence harmless error.

■ (a) "If the tort be committed, not by reason of the employment, but because of matters disconnected therewith, the master would not be liable." *Frazier v. Southern R. Co.,* 200 Ga. 590, 593 (37 SE2d 774). Whether or not the servant was acting within the scope of his employment at the time of the injury is usually a jury question. *Ford Motor Co. v. Williams,* 108 Ga. App. 21, 25 (132 SE2d 206); *Atlanta Hub Co. v. Jones,* 47 Ga. App. 778 (2) (171 SE 470); *Personal Finance Co. of Macon v. Whiting,* 48 Ga. App. 154

(4) (172 SE 111); *American Security Co. v. Cook,* 49 Ga. App. 723 (2) (176 SE 798); *Candace v. Newton,* 91 Ga. App. 357, 358 (85 SE2d 616). The court charged the jury on this subject: "I further instruct you the act of a servant may be within the scope of his employment though not done at the master's direction or with his permission and even if his master does not know the act is being committed. The test is whether the act is done by the servant in connection with the master's business and for the purpose of promoting the master's interest. It is not necessary that the thing done be wise or beneficial to the master, provided the servant's purpose is to benefit the master."

This was the only instruction available to the jury by which they could determine, if they concluded as they might have done under some of the evidence that the killing was not in self-defense, whether or not the defendant employer would be liable. The ultimate fact here depends on a jury determination of the intent of the employees. Thereafter, however, the court charged: "In the event you should find Garland L. Thompson committed a wrongful act which was not justified under the law and if you find such wrongful act was the proximate cause of the death of Herman Charles Hunter, then and in that event the complainant would be entitled to recover," against the bonding company. Objection to this charge was made and overruled. Regardless of any prior agreement between counsel as to the elimination of the scope of employment issue from the case, when the court charged in effect that the master might be responsible for the act of the servant even though not done at the master's direction, and then charged positively that A-1 Bonding Company would be liable if Thompson committed a wrongful act which was the proximate cause of Hunter's death, the jury was left with only two alternatives—to find that Hunter attacked and Thompson shot in self-defense, or to find A-1 Bonding Company liable regardless of whether Thompson and Bowers returned to arrest Willie B. Hunter or returned for the personal satisfaction of punishing Herman Charles Hunter for his prior

assault on Bowers.

It is contended that the issue of scope of employment had been eliminated from the case by a certain colloquy which ended as follows: "The Court: You contend now that your people were agents and acting within the scope of their employment?" Counsel for defendant: "Yes, sir, Your Honor, in going out there to pick up Willie B. Hunter they were entirely within the scope of their employment. That was their job." This does not amount to a stipulation that if the reason for going there was personal animosity and not the intent to arrest Hunter that the act was still to be considered within the scope of employment. The instruction was harmful because the charge as a whole called the jury's attention to the issue, and informed them that scope of employment might be co-existent with lack of instruction or even knowledge by the employer, and then informed them specifically that if the homicide was not justifiable the employer was liable. Such instruction was error which might well have been extremely prejudicial to the defendant, and therefore requires a reversal of the case.

(b) The question has been raised whether counsel's objection to the above quoted charge sufficiently pointed out the error complained of under the wording of the requirement stated in *Ga. Power Co. v. Maddox,* 113 Ga. App. 642 (1) (149 SE2d 393): "The grounds of error urged must fully apprise the court of the error committed and the correction needed to cure the error." This language is too broad, as suggesting that counsel is required to suggest a correct instruction in place of that objected to, where the statutory requirement is only that he shall state "distinctly the matter to which he objects and the grounds of his objection." *Code Ann.* § 70-207 (a). Rulings in *Ga. Power Co. v. Maddox,* 113 Ga. App. 642, supra, and any other cases requiring a greater particularity of objection than that required by the Code section are hereby specifically disapproved. The addendum written by Chief Judge Bell, speaking for the court, is adopted and made a part of this majority opinion.

■ In arriving at the value of the life of the decedent "the jury is not bound to find that lifetime earnings reduced to present value is the full value of the life of the decedent, but such is an aid only to the jury in making such determination. *Standard Oil Co. v. Reagan,* 15 Ga. App. 571, 572 (5, 6) (84 SE 69)." *Rhodes v. Baker,* 116 Ga. App. 157 (4) (156 SE2d 545); *Bulloch County Hospital Authority v. Fowler,* 124 Ga. App. 242 (183 SE2d 586). Potential earning capacity may be considered. In the present case, although the actual earnings of the decedent for the past two years did not, considered in connection with the Carlisle mortality and annuity tables, equal the $60,000 verdict returned as the value of the remainder of his life reduced to present cash value, the jury was not limited by the employment record, which showed that the employment of the deceased was very sporadic but that, had he worked continuously, his earnings would have been well within the range of the verdict. The jury therefore had a right to consider earning potential in connection with the testimony of the widow as to the fact that he was laid off during inclement weather and also that he had been at times in bad health.

■ Whether or not the deceased was convicted several years prior to this occurrence for illegal possession of a pistol has no relevancy whatever to the question of whether at the time of his death he was in possession of firearms. The conviction records were properly excluded.

*Judgment of the trial court denying the motion for judgment notwithstanding the verdict affirmed; judgment denying the motion for new trial reversed. Jordan, P. J., and Pannell, J., concur. Hall, P. J., and Eberhardt, J., concur, except as to Division 5, to which they dissent. Jordan, P. J., Hall, P. J., Eberhardt and Deen, JJ., concur specially. Addendum by Bell, C. J., with all participating judges concurring. Bell, C. J., and Quillian, J., dissent. Whitman, J., not participating because of illness; Evans, J., disqualified.*

DEEN, Judge, concurring specially. In further considering *Code Ann.* § 70-207 (a), this Code section finds its origin in Federal Rule 51, which provides: "No party may assign as

error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Concerning this rule Moore says: "The Rule does not require formality, and it is not important in what form an objection is made or even that a formal objection is made at all, *as long as it is clear that the trial judge understood the position;* the purpose of the Rule is to inform the trial judge of possible errors so that he may have an opportunity to correct them. By the same token, a mere general objection is insufficient. . ." 5A Moore, Fed. Practice, § 51.04, p. 2521.

Our rule, found in *Code Ann.* § 70-207 (a), provides: "Except as otherwise provided in this section, in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury, unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the ground of his objection. Opportunity shall be given to make the objection out of the hearing of the jury, and objection need not be made with the particularity of assignments of error (abolished by this law) and need only be as reasonably definite as the circumstances will permit."

Thus, the General Assembly specifically provided against any requirement of particularity such as may have been indicated in the language that we have used in some of our decisions. I think it had in mind the same test which Professor Moore says is to be applied in making objections under the Federal Rule—if the objection is sufficient to indicate to the trial judge what the party's position is, or what he is contending to be error in the charge, it is enough.

In *Smith v. Nelson,* 123 Ga. App. 712 (182 SE2d 332), we dealt with an exception to the charge which appellee contended was lacking in the specificity required by our prior decisions. We examined the objection, concluded that it was

enough to apprise the trial judge of what the objector was contending to be error in the charge, and observed that "If heretofore we have, on occasion, been more restrictive than the statute our rulings should yield to the statute." P. 722.

We therefore specifically disapprove this above quoted statement in *Maddox* and any other cases in which it may have appeared. The objection to the instruction of the court considered in this division of this opinion was almost a page and a half in length and amply apprised the court of the objecting party's contentions.

This view is not in conflict with the requirement that the *grounds* of objection be made known to the court, as found in *Royal Frozen Foods v. Garrett,* 119 Ga. App. 424, 427 (167 SE2d 400), or in *City of Macon v. Smith,* 117 Ga. App. 363, 377 (160 SE2d 622)—for the statute requires that. Nor does it conflict with holdings that the grounds cannot be enlarged on appeal to include grounds not urged before the trial court, as found in *Black v. Aultman,* 120 Ga. App. 826, 828 (172 SE2d 336), and in *Fidelity-Phenix Fire Ins. Co. v. Mauldin,* 123 Ga. App. 108, 111 (179 SE2d 525), or with the rule that where no exception is made before verdict error claimed on appeal will not be reviewed, unless it is deemed to be substantial and error as a matter of law under § 70-207 (c), as we have held in many cases, such as *Worsham v. Trimble,* 120 Ga. App. 180 (169 SE2d 689) or with the rule that a mere general exception to the charge or a portion of it is insufficient to raise any issue for decision, as we have held in *McChargue v. Black Grading Contractors,* 122 Ga. App. 1, 6 (176 SE2d 212), and in *Crider v. State,* 114 Ga. App. 523, 526 (151 SE2d 792). These rulings are consistent with the statutory requirement that the exception be made before verdict, stating the matter or portion of charge excepted to and the ground of objection. See also *Horton v. Ammons,* 125 Ga. App. 69. Upon circulation of this case to the whole court a memorandum was prepared by Judge Eberhardt, containing the material used in this special concurrence. This material has been adopted by the writer of this special concurrence.

Presiding Judges Jordan and Hall, and Judge Eberhardt join in this special concurrence.

BELL, Chief Judge, speaking for the court. My colleagues suggest, and I agree, that the last sentence in Headnote 1 in the case of *Ga. Power Co. v. Maddox,* 113 Ga. App. 642 (149 SE2d 393) says too much, goes too far, and is too restrictive on counsel. The sentence reads: "The grounds of error urged must fully apprise the court of the error committed *and the correction needed to cure the error."* The last clause, particularly, is faulty as it may be construed as imposing the obligation on counsel of suggesting a correct charge. Obviously, the charge is the responsibility of the court and not of counsel.

Therefore, speaking for myself and all of my colleagues participating in this case, that sentence found in Division 1 and the corresponding headnote in the case of *Ga. Power Co. v. Maddox,* 113 Ga. App. 642, supra, stating that "The grounds of error urged must fully apprise the court of the error committed and the correction needed to cure the error" is specifically overruled and ordered stricken from that case and from all other cases quoting and citing the sentence.

*All of the Judges of the court concur, except Whitman, J., not participating because of illness, and Evans, J., disqualified.*

BELL, Chief Judge, and QUILLIAN, Judge, dissenting. We disagree with Division 4 of the majority opinion. We would affirm the trial court. Following is the way we would have written that division of the opinion:

■ Error is urged to this extract of the charge: "In the event you should find Garland L. Thompson committed a wrongful act which was not justified under the law and if you find such wrongful act was the proximate cause of the death of Herman 'Charles' Hunter, then and in that event the complainant would be entitled to recover." On appeal the argument is that the charge eliminated the issue as to whether the perpetrators of the act under suit were acting within the scope of their authority. The objection as made

to the trial court was phrased as follows: "In the course of the court's charge, the court charged the jury that if you find that the wrongful act of Garland Thompson was the proximate cause of the death of Herman Hunter, then the plaintiff may recover. Of course, the court also gave in charge the alternative, if you find that it was a justifiable act, that the defendant should recover but we lodge an exception to the giving of the statement that if you find that the wrongful act of Thompson caused the death of the plaintiff then in that event the complainant would be entitled to recover, by the giving of that charge the court has eliminated from its cause the question of scope of employment. Now, it is true that after the plaintiff amended her petition and after counsel in examining witnesses removed from the case the element of wilfulness and wantonness and evil design, that we stated that on those circumstances we conceded and admitted that these agents were acting within the scope of their authority when they were seeking to arrest Willie B. Hunter. In the argument to the jury counsel for the plaintiff sought to reinstate that issue in the case and told this jury they went out there for this specific purpose to kill Herman Hunter and they accomplished that purpose. Under that argument to the jury we lodge an exception to the giving of that charge. . ."

In essence the objection to the trial court was that a stipulation volunteered by the defendant that the perpetrators of the act under suit were acting within the scope of their employment was abrogated by argument of plaintiff's counsel that "They went down there and killed him, that was the purpose they had when they went down there. They knew they were going to kill him when they went down there." This, they reasoned, was the result because the argument had the effect of reinstating the issue of "malice" ruled out by a previous appellate court decision and subsequently eliminated by amendments. It is thus to be noted that the grounds of the objection to the charge as given to the trial court during the trial, is far different from the argument urged on appeal to this court. Under the objec-

tion originally made the trial court's attention was brought only to the contention that the charge was objectionable only because the argument of plaintiff's counsel had the dual effect of reinstating the issue of malice and of annulling the stipulation of the perpetrators acting within the scope of their agency. The court's failure to honor this objection is amply supported by the record. Firstly, assuming arguendo that the argument of plaintiff's counsel was indeed improper, there was no objection made to it. When an improper argument is made to the jury, the adversary must act by interposing an objection. Failure to object amounts to a waiver of the misconduct. *Saxon v. Toland,* 114 Ga. App. 805 (2) (152 SE2d 702); *Brooks v. State,* 183 Ga. 466, 468 (188 SE 711, 108 ALR 752); *Woodland Hills Co. v. Coleman,* 73 Ga. App. 409, 413 (36 SE2d 826). Secondly, the transcript reveals the following colloquy between the trial judge and defendant's counsel. This colloquy was initiated by defendants themselves and took place in the presence of the jury. "The Court: 'You contend now that your people were agents and acting within the scope of their employment?' Defendant's counsel: 'Yes, Sir, Your Honor, in going out there to pick up Willie B. Hunter they were entirely within the scope of their employment. That was their job.'" Furthermore, the defendant in its brief, with reference to this colloquy, makes the admission that it "had the effect of eliminating from the case the issue of scope of employment." This admission cannot be affected by the full language of the sentence from which this extract is lifted, which reads: "However, following these stipulations, which had the effect of eliminating from the case the issue of scope of employment *and* that of wilful homicide, the plaintiff once again interjected these issues into the suit." Issues cannot be made, or solemn *stipulations and admissions repudiated, merely by improper argument of counsel to which no objection is interposed. The extract from the charge was not erroneous (1) as the issue of "scope of employment" was by the volunteered stipulation of the defendant's counsel eliminated from the case and (2) the objection

urged on appeal was different from that urged on trial.

For an objection to a charge "to be reviewable the objection must be unmistakable in its purport in directing the attention of the trial court to the claimed error and must point out distinctly the portion of the charge challenged. The grounds of error urged must be stated with sufficient particularity to leave no doubt as to the portion of the charge challenged or as to what the specific ground of challenge is. . . *Ga. Power Co. v. Maddox,* 113 Ga. App. 642 (1) (149 SE2d 393)." *Wright v. Dilbeck,* 122 Ga. App. 214 (17) (176 SE2d 715).

To be reviewable "the objection must be sufficiently specific to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the trial court." *Royal Frozen Foods v. Garrett,* 119 Ga. App. 424, 427 (167 SE2d 400), reversed on other grounds in *Garrett v. Royal Bros. Co.,* Inc., 225 Ga. 533 (170 SE2d 294). "These were the only grounds of objection stated on the trial. 'Although on appeal plaintiffs argue additional grounds of objection to this charge, review of the charge enumerated as error is limited under *Code Ann.* § 70-207 (a) strictly to the ground of objection stated on the trial." *City of Macon v. Smith,* 117 Ga. App. 363, 377 (160 SE2d 622), a full bench decision.

EBERHARDT, Judge, dissenting in part. While I concur in the judgment of reversal and in Divisions 1, 2, 3, 4 and 6 of the majority opinion, in Judge Deen's special concurrence and Chief Judge Bell's addendum relative to the case of *Ga. Power Co. v. Maddox,* 113 Ga. App. 642 (149 SE2d 393), and agree that the holding in Division 5 of the majority opinion is in keeping with the majority holding of *Bulloch County Hospital Authority v. Fowler,* 124 Ga. App. 242 (183 SE2d 586), I do not regard the holding there or here to be in keeping with *Atlantic &c. R. Co. v. McDilda,* 125 Ga. 468, 471 (54 SE 140, 114 ASR 240); *Central of Ga. R. Co. v. Ray,* 129 Ga. 349 (2) (58 SE 844); *Alabama Great Southern R. Co. v. Brown,* 138 Ga. 328 (75 SE 330); *Central of Ga. R. Co. v. Minor,* 2 Ga. App. 804 (59 SE 81); *Pollard v. Boat-*

*wright,* 57 Ga. App. 565, 568 (196 SE 215); *Atlanta B. & C. R. Co. v. Thomas,* 64 Ga. App. 253, 258 (12 SE2d 494), and others cited in my dissent to the *Fowler* case. These cases represent rulings made by the Supreme Court and older decisions of this court, none of which has ever been overruled, and by which we are bound.

I am authorized to state that Presiding Judge Hall joins in this dissent.