70416. COASTAL HEALTH SERVICES, INC. v. ROZIER.
(335 SE2d 712)

Deen, Presiding Judge.

In June 1982 the late Fannie S. Murray was admitted as a patient, with the diagnosis of chronic brain syndrome, at the Ware Manor nursing home. She was 85 years old at the time, and because of her confused state of mind and propensity to wander, her treating physician advised restraint on an "as needed" basis. On or about July 28, 1982, August 29, 1982, and September 1, 1982, she was injured by other patients at the facility after she had wandered into the other patients' rooms. After the last incident, her family removed her from the facility. Fannie Murray died on February 9, 1983, evidently from causes unrelated to the injuries sustained while she was a patient at Ware Manor.

Subsequently, the appellee, Merle Murray Rozier, as administratrix of the estate of Fannie S. Murray, commenced this action against the appellant, Coastal Health Services, Inc., d/b/a Ware Manor and Ware Manor, Inc., seeking damages for the allegedly negligent care of Fannie Murray. Following the trial, the jury returned a verdict for the plaintiff for $85,698.63. On appeal, several evidentiary rulings by the trial court, as well as the trial court's refusal to declare a mistrial, are enumerated as error. *Held*:

1. The appellant contends that the trial court erred in allowing the nursing home administrator to read from a social history of one of the two patients who had injured Fannie Murray. This social history, which was prepared by the nursing home social services director upon the patient's admission, recounted the patient's statement about an earlier violent episode where he had attacked his sisters with a knife and an ice pick. The trial court admitted this testimony over the appellant's objection, on the basis that it was probative as notice to the nursing home of the possible violence of that patient. (The social services director also testified without objection about the statement, and the written social history also was included in the nursing home records that were admitted into evidence.)

Obviously, one crucial issue in the case was whether the defendant nursing home had any reason to foresee Fannie Murray's injury at the hands of other patients in the facility. It follows that evidence of the defendant's knowledge of, or a basis for inquiring into, the possi-

ble violent propensities of a particular patient who actually injured Fannie Murray was quite pertinent to the determination of that issue. The testimony about one patient's own account of his violent past, made to the nursing home personnel upon his admission, certainly was admissible as original evidence, not as proof of the actual prior incidents, but to show the defendant's notice of the possibility of violent behavior on the part of that patient. See *Fletcher v. Fletcher*, 242 Ga. 158 (249 SE2d 530) (1978).

2. The appellant also contended that the trial court erred in admitting psychological evaluations of the two patients who injured Fannie Murray. Such evaluations, if tendered as proof of the truth of the matter contained therein, are inadmissible unless the person who made the entry appears before the court, qualifies as an expert, and relates the facts upon which the entry was based. *Dennis v. Adcock*, 138 Ga. App. 425 (226 SE2d 292) (1976); *Giles v. Taylor*, 166 Ga. App. 563 (305 SE2d 154) (1983). Nevertheless, as discussed above, these evaluations were admissible for the purpose of showing that the defendant's agent had been put on notice at least to investigate the possibility of the two patients' violent behavior. Cf. *Moore v. State*, 154 Ga. App. 535 (268 SE2d 706) (1980).

3. The trial court admitted into evidence the nursing home's patient records on Fannie Murray. The appellant here reiterates its objection at trial that the incident reports included in those records were inadmissible because they contained mere hearsay accounts of how Fannie Murray was injured. Hearsay accounts of how the injuries occurred, despite appearing in a business record, still are inadmissible. *Emmett v. State*, 232 Ga. 110, 116 (205 SE2d 231) (1974). However, admission of these incident reports (only two of which actually provide hearsay accounts) did not result in reversible error. In its answer and during the trial, the defendant disputed neither the facts of the injuries nor how they occurred, the details of which, as adduced by other, admissible evidence, were consistent with the hearsay portions of the incident reports.

4. The trial court also admitted into evidence a lengthy report prepared by the local ombudsman (who did not testify at the trial), concerning her subsequent investigation of the injuries and treatment of Fannie Murray. We agree with the appellant that admission of this report in its entirety was error, as it is replete with inadmissible hearsay accounts of various conversations as well as impressions, opinions, and conclusions. See *Calhoun v. Chappell*, 117 Ga. App. 865 (162 SE2d 300) (1968). While much of the objectionable material was duplicative of other admissible evidence, the report still contained several conclusions and impressions addressing the alleged negligence of the defendant. For that reason, this court cannot conclude that the erroneously admitted report did not affect the verdict, and retrial is

necessary. The appellee contends that the ombudsman's report was admissible under OCGA § 31-8-58; however, that Code section merely removes the problem of confidentiality in allowing disclosure of such investigative information in a judicial proceeding, and does not eliminate application of the regular rules of evidence.

5. In view of the holding in Division 4, we need not address the appellant's contention that the trial court's admonishment of counsel and curative instruction was an insufficient antidote to the improper comment regarding the defendant's financial condition made by the appellee's counsel during closing argument.

*Judgment reversed. Pope and Beasley, JJ., concur. Beasley, J., also concurs specially.*

BEASLEY, Judge, concurring specially.

I agree with all that is said in the opinion. However, regarding Division 1, I wish to add a focus on OCGA § 24-3-2 because the *Fletcher* case does not make the point clear enough. *Fletcher v. Fletcher*, 242 Ga. 158 (5) (249 SE2d 530) (1978) involved a multiple use of the evidence. It was offered not only to show knowledge but also to explain conduct. Moreover, two code sections are cited, Code Ann. § 38-302 (now OCGA § 24-3-2) and § 38-309 (now OCGA § 24-3-8). The latter is not applicable to the case before us at all, which deals only with OCGA § 24-3-2. In addition, the current case does not deal with explaining conduct but purely with showing knowledge. Moreover, *Fletcher's* holding is somewhat governed by the caveat set out in Division 4 of that opinion, namely, that the court viewed the evidence very liberally because of the particular issues in that case. Those issues, or comparable liberalizing ones, do not exist here.

OCGA § 24-3-2 allows as original evidence that which would ordinarily be hearsay if it constitutes facts which "explain conduct" or "ascertain motives." Neither one of these was the purpose here, as plaintiff was not seeking by this evidence to show why the nursing home acted as it did with respect to Fannie Murray, that is, the reason or basis or cause of its behavior towards her, but rather that it had knowledge which should have prompted it to act in a different way. As counsel explained when the objection based on hearsay was made, "we are charging the nursing home with knowledge of dangerous propensities of a patient. She [the administrator] has testified earlier that the history is something they take when they bring a patient in." The court allowed the evidence for the limited purpose of showing that, in connection with the case of Fannie Murray, the home had knowledge of that report, which was in its file on the patient who injured Fannie Murray, having been prepared by its social services director based on conversations with the patient upon his admission three years earlier, and which statement of the patient it considered

to be true. Defendant had said in its opening statement that the home did not know of the incidents involving that patient which had occurred prior to his admission to the home because he came directly from the hospital and the certification had already been done by someone else.

Thus, the home's knowledge of patient Hannon's reportedly violent propensities prior to admission was in issue, as related to its duty to protect Fannie Murray from harm. Although the evidence does not come within the four corners of the explicit language of OCGA § 24-3-2, it comes within its principle. That is, as shown in the court's discussion in *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982), of the history of the section, the section only identifies some examples of evidence which are not in the nature of hearsay in the first place. OCGA § 24-3-2 is not all-inclusive however. As pointed out by Greenleaf, whose writing was the source of the code section: " 'This doctrine applies to all other communications, wherever the fact that such communication was made, and not its truth or falsity, is the point in controversy.' " *Momon*, supra at 867.

This fits the evidence here precisely. *Whether* Hannon had previously injured his sisters was not at issue; nor was the issue *whether* Hannon had so told the social services director. What was at issue was whether the nursing home knew in 1984 that it had such a report in its file, and that was the subject and limited use of the administrator's testimony. Thus it was not hearsay, because the very fact in controversy was merely whether the document containing such statements was within the knowledge of defendant.

DECIDED SEPTEMBER 26, 1985.

*Daniell S. Landers*, for appellant.
*Rudolph J. Chambless, C. Edwin Rozier*, for appellee.