71958. COHEN v. HARTLAGE.
(348 SE2d 331)

BEASLEY, Judge.

Plaintiff Cohen appeals from the grant of defendant Hartlage's motion for summary judgment in an action for libel alleging that a report Hartlage made to the Georgia Board of Examiners of Psychologists (Board) contained false and defamatory statements. Hartlage defended and moved for summary judgment on the basis that the report was privileged under OCGA § 51-5-7.

Cohen was a psychology intern at the Medical College of Georgia. Hartlage was the supervisor under whom Cohen was required to spend a certain minimum number of hours in order to secure his license. Early intern evaluation checklists by Hartlage were favorable. In December 1982 Hartlage wrote a letter of recommendation for Co-

hen in which he stated that Cohen "has demonstrated the highest standards of professionalism. He possesses excellent interpersonal skills, works well independently and is highly motivated. I feel he would be an excellent addition to your staff." The following April, Hartlage signed a direct supervisor form and personal reference form which were forwarded to the Board. The answer "yes" followed the question: "If the proper vacancy arose, would you be willing to employ the applicant in your organization?" The form also confirmed that Cohen had completed over 2,000 hours under supervision.

Subsequently, Hartlage requested that the Board return the forms to him, and in July he submitted revised forms which set out that he would not hire Cohen but would consider him for "supervised psychometrist type of work, as he does have skills in this area and could function adequately with professional psychological supervision to prevent ethical problems." Hartlage gave as reason for his qualified negative answer regarding Cohen's employment: "Poor translation of ethical standards of psychologists into professional practice, as reflected in incidents brought to my attention by faculty, residents, staff, and trainees in recent weeks, requiring my meeting with him 6/30 to remind him of principles 1f, 3c, 5d, 7a,b." Hartlage also disputed Cohen's claim of 2,000 hours supervised work, contending his own documentation showed only 852 hours.

During this time a controversy arose in the Department of Neurology, to which Hartlage belonged, regarding who would have control over Cohen. The chairman of the department gave administrative supervision to another psychologist while Hartlage retained clinical supervision. This prompted Hartlage to place a sign on the chairman's office which implied the chairman was subordinate to the other psychologist.

There was a sharp dispute in the proof as to what transpired when the first forms, of April, were signed. According to Cohen they were gone over in great detail, line by line, before Hartlage signed them. He pointed out the presence of a handwritten addition to one document as evidencing the fact that the forms were fully considered before they were signed. On the other hand, Hartlage related he signed the forms along with several others as he was hurrying to catch a plane, and because of the rush it was tacitly understood that he would review the forms later and that he intended to make any necessary changes. After learning the forms had been sent he called the Board and was told a formal letter was necessary to recall them. He recalled and revised the forms and sent them back. This resulted in Cohen's application being delayed although he eventually received his license.

The alleged ethical violations attributed to Cohen by Hartlage involved Cohen's seeing one or more of Hartlage's patients without

authorization. This was contradicted by Cohen. Hartlage testified by deposition and affidavit that he was not motivated by malice in executing the second document, and that he was not influenced by interdepartment conflict. Instead, Hartlage said, he filed the second forms because he believed that Cohen had not completed the necessary hours and also had acted in such a way as to possibly infringe upon ethical standards.

Foremost in our consideration is Hartlage's contention that the statements contained in the report to the Board were privileged under OCGA § 51-5-7. This privilege is a qualified or conditional one which may be lost if "used merely as a cloak for venting private malice." OCGA § 51-5-9. The cases speak of the privilege's forfeiture when one acts "wilfully, corruptly or maliciously." *McKinnon v. Trivett*, 136 Ga. App. 59, 62 (3) (220 SE2d 63) (1975); *King v. Masson*, 148 Ga. App. 229, 231 (1) (251 SE2d 107) (1978). Stated another way, good faith and good intentions are necessary and essential ingredients of a conditionally privileged communication. *Lamb v. Fedderwitz*, 71 Ga. App. 249, 252 (1) (30 SE2d 436) (1944).

Generally both the question of whether the communication was privileged and whether it was uttered maliciously are jury questions. *Lamb*, supra; *Nicholson v. Dillard*, 137 Ga. 225, 231 (73 SE 382) (1911). "[T]o make the defense of privilege complete . . . good faith, an interest to be upheld; a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear." *Sherwood v. Boshears*, 157 Ga. App. 542, 543 (278 SE2d 124) (1981) quoting from *Sheftall v. Central of Ga. R. Co.*, 123 Ga. 589 (5) (51 SE 646) (1905).

On summary judgment the issue is simply whether defendant established as a matter of law that he made privileged statements. Cohen concedes that the matter contained on the forms is a privileged communication, see *Land v. Delta Airlines*, 147 Ga. App. 738 (2) (250 SE2d 188) (1978), but contends that a jury question exists as to whether they were uttered with malice.

Hartlage has supported his motion by his own direct testimony as to good faith and lack of malice. In such posture Cohen cannot rest upon his allegations or denials but is cast with the burden showing there was a genuine issue for trial. *Morton v. Gardner*, 155 Ga. App. 600, 604 (5) (271 SE2d 733) (1980).

In an effort to meet this burden Cohen relied upon his deposition and an affidavit by the chairman of the neurology department that in the opinion of each, based on certain circumstances, Hartlage was motivated by malice and acted with evil intent because of the internecine strife in the department. The trial court struck the opinion testimony relating to Hartlage's motives or intent.

While opinion evidence of state of mind or mental condition may

be admissible, see *Leonard v. State*, 157 Ga. App. 37, 38 (1) (276 SE2d 94) (1981), usually opinion evidence as to one's motives or intent is not. *Gardner v. State*, 90 Ga. 310 (4) (17 SE 86) (1892); *Isley v. Little*, 219 Ga. 23, 27 (5) (131 SE2d 623) (1963). "Intent is something which exists in the human mind and can be manifested only by external acts from which an inference of intent will arise." *Gaynor v. Travelers Ins. Co.*, 12 Ga. App. 601, 605 (77 SE 1072) (1913). Thus, upon the question of malice one may show the state of mind of the defendant by testimony as to extraneous hostile acts. *Van Gundy v. Wilson*, 84 Ga. App. 429 (1) (66 SE2d 93) (1951); *Savannah Bank & Trust Co. v. Sumner*, 174 Ga. App. 229, 232 (2) (329 SE2d 910) (1985). Since, in any case, the opinion testimony would be no stronger or more persuasive than the facts on which the opinions were based we need only consider them.

Cohen presents the facts regarding the departmental conflicts and the interaction between the parties involved and asks the court to infer the presence of evil intent or malice towards him on Hartlage's part. In brief, this is a classic example of the situation exemplified in *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776 (257 SE2d 186) (1979). Thus, where there is uncontradicted testimony by a party as to a certain fact (here, that Hartlage acted without malice) then the opposing party must produce "some other fact" to the contrary (here, that Hartlage acted maliciously). If the "other fact" is shown directly, that is sufficient for the case to go to a jury, but if it is circumstantial then it must be evidence sufficient to support a verdict. The circumstantial evidence must be inconsistent with the direct testimony[1] and must tend to establish the conclusion projected while rendering less probable all inconsistent conclusions. *McCarty v. Nat. Life &c. Ins. Co.*, 107 Ga. App. 178 (129 SE2d 408) (1962); *Old Colony Ins. Co. v. Dressel*, 220 Ga. 354, 358 (2) (138 SE2d 886) (1964). As repeated in *Allen Kane's Major Dodge*, supra at 780-781: " 'When the party upon whom the burden of an issue rests seeks to carry it, not by direct proof, but by inferences, he has not, in this reasonable sense, submitted any evidence for a jury's decision, until the circumstances he places in proof tend in some proximate degree to establish the conclusion he claims; and for this, the facts shown must not only reasonably support that conclusion, but also render less probable all inconsistent conclusions.' [Cit.]"; the evidence must not constitute a "mere inconclusive inference" for then it is insufficient to withstand summary adjudication.

The question of what are reasonable inferences has been discussed by other courts which have sought to articulate the dividing

---

[1] Compare *Myers v. Phillips*, 197 Ga. 536, 542 (29 SE2d 700) (1944).

line between the permissible and the impermissible. They shed light on a concept that is difficult to capture. *City of Portland v. Bureau of Labor*, 298 Or. 104, 115, fn. 5 (690 P2d 475, 481) (1984) articulates in the negative: "if on all of the evidence in the case there can be no reasonable doubt of the nonexistence of the fact which can only be inferred, the party depending for success on the inference will lose as a matter of law. [Cit.]" *Probst v. Seyer*, 353 SW2d 798, 802 (Mo. 1962) explains: "But, of course, the case is not to be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. Neither may any fact essential to submissibility be inferred in the absence of substantial evidentiary basis. In other words, liability cannot rest upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence." A description given in 20 AmJur, § 165, p. 169, is quoted in *Glidewell v. Arkhola Sand &c. Co.*, 212 Ark. 838, 843 (208 SW2d 4, 8) (1948): " 'What is meant is that an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility.' " A permissible inference "must be made in accordance with correct and common modes of reasoning." *Patton v. L. O. Brayton & Co.*, 184 Tenn. 592, 598 (201 SW2d 981, 984) (1947), quoting from 32 CJS, Evid., § 1044, pp. 1131-1133. The idea of probabilities rather than possibilities, expressed in CJS and alluded to in *Allen Kane's Major Dodge*, supra at 780-781, is given center stage in *Kentwood Lumber Co. v. Ill. Cent. R. Co.*, 65 F2d 663, 665 (5th Cir. 1933): "inferences must be based on probabilities, not on possibilities; . . ." Straightforward is the rule that "[n]o inference of fact may be drawn from a premise which is wholly uncertain." *Kenney v. Washington Properties*, 128 F2d 612, 615 (D.C. Cir. 1942).

Perhaps clearest is the explanation given in *International R. Co. v. Boland*, 169 Misc. 926 (8 NYSupp.2d 643, 646) (1939): "Substantial evidence must mean evidence of substance which establishes facts and from which reasonable inferences may be drawn. It does not connote suspicion, imaginative suggestions, surmises or conjectures. Reasonable inferences are not fine-spun arguments but are inferences based upon a reason or that a reasonable man would accept."

These assist, then, in measuring when, as a matter of law, an inference is not reasonable. That is the question here. To put it another way, is the evidence such that the factfinder would not be permitted to draw the desired inference from it?

Here, the circumstances shown by the evidence fall short of providing a bridge for the factfinder to infer that Hartlage's final report regarding Cohen was prompted by malice towards him.

It cannot be assumed that Hartlage vented, towards the student Cohen, the hostility caused by a conflict with his colleagues. The fact of the power struggle is not inferentially contradictory to Hartlage's

assertion that he made the statements contained in the report because of a changed perception of Cohen rather than from malice. It is true that the departmental dispute coupled with the acts of Hartlage towards the other members of the faculty might raise an inference of his malice towards them. But Cohen relies on such acts as demonstrating malice towards him. This is no more than speculation in the absence of any additional factors bringing Cohen into the controversy as a possible target of Hartlage's displeasure. Since the circumstantial facts raise only conjecture that Hartlage was not acting bona fide in promotion of the object for which the privilege is granted, and could be considered as entirely consistent with Hartlage's direct testimony, they constitute an inconclusive inference, amounting only to supposition, conjecture, speculation, a guess. The fact of malice towards Cohen, sought to be drawn indirectly from the direct evidence of the controversy with the colleagues over supervision of Cohen, requires the bridging of too great a gap and would not be a reasonable inference, as a matter of law.

Thus summary judgment was properly granted to .defendant. *Sparks v. Parks*, 172 Ga. App. 823 (324 SE2d 784) (1984); *Clayton v. Macon Telegraph &c. Co.*, 173 Ga. App. 466 (326 SE2d 789) (1985). *Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED JULY 9, 1986 —
REHEARING DENIED JULY 24, 1986 —

*James W. Ellison, James B. Wall*, for appellant.
*Stanley G. Jackson*, for appellee.