A90A0607. SANDERS v. BOWEN et al.
(396 SE2d 908)

DEEN, Presiding Judge.

Defendant Donald Sanders appeals a judgment entered on a jury verdict for plaintiffs Daimian and John Bowen in the amount of $76,000 damages for personal injuries received by Daimian when he was bitten by defendant's pit bulldog.

1. After a case is tried, an appellate court will not review the denial of a motion for summary judgment because that issue became moot upon the trial. *Drillers Svc. v. Moody,* 242 Ga. 123 (249 SE2d 607) (1978); *Preferred Risk Mut. Ins. Co. v. Thomas,* 153 Ga. App. 154 (1) (264 SE2d 662) (1980); *Hardaway Constructors v. Browning,* 176 Ga. App. 530 (1) (336 SE2d 579) (1985).

2. Sanders enumerates as error the denial of his motions for directed verdict and j.n.o.v. in enumerations 2 and 18. He also asserts that it was error for the court to permit the submission of the issue of agency regarding defendant's sons (enumeration of error 7), which proposition is supported by substantially the same argument as are the evidentiary questions presented in enumerations 2 and 18. We consider these grounds together.

On September 23, 1986, 13-year-old Daimian Bowen and Adam Marlow visited defendant's property. According to Daimian, defendant's son Wayne had invited him and Adam to see some game chickens about two weeks before. "Bad Eye," an 8-10 month old pit bulldog which defendant had owned between one and two months, was tied to a tree in the backyard. As Daimian approached defendant's sons in the yard, the dog broke his part chain, part rope restraint and bit him, causing severe injury.

Neither side contends that the leash portion of OCGA § 51-2-7 is in issue. The heart of the case involves plaintiffs' burden of proving that defendant had knowledge that the dog was a vicious or dangerous animal. *Harvey v. Buchanan,* 121 Ga. 384 (49 SE 281) (1904).

Defendant denied any knowledge of dangerous propensities or of his dog ever having bitten another person prior to the incident involving Daimian. To counter this and meet their burden of proof, plaintiffs sought to establish that defendant has designated his three sons,

Steve age 16 or 17, Wayne age 15 or 16, and Jay age 9 or 10, to take care of Bad Eye and thus constituted them as defendant's agents so that their admissions could be attributed to him as their principal (OCGA § 24-3-33), he would be responsible for their acts (OCGA § 51-2-2), and their knowledge would be his knowledge, at least constructively. See *Flowers v. Flowers*, 118 Ga. App. 85 (2) (162 SE2d 818) (1968); *Hays v. Anchors*, 71 Ga. App. 280 (1) (30 SE2d 646) (1944). In support of this theory, plaintiffs attempted to introduce testimony that defendant's sons told them that the dog had tried to bite Wayne and had bitten defendant's youngest son, Jay. Defendant contends this evidence was hearsay.

Daimian and Adam Marlow both testified that Jay Sanders told them that Bad Eye had bitten him prior to the dog's attack on Daimian. Jay denied this as did other members of defendant's family. This created a jury issue as to what Jay said and whether he was bitten by Bad Eye. Jay was the only one to whom any statement about Bad Eye's biting him was attributed. In order to demonstrate defendant's knowledge of the dog's actions, plaintiffs had to introduce evidence that Jay acted as defendant's agent in caring for Bad Eye. Defendant testified that he gave his sons permission to keep the dog in the backyard and in response to the question, "Which one of your sons took care of the dog Bad Eye?" he answered: "Wayne did mostly." Plaintiffs fail to show by the record that this crucial fact of Jay's agency was otherwise established. This evidence was at most ambiguous as to Jay's special status and thus as to defendant's knowledge of the event. The mere fact that Jay was defendant's son would not be enough to show defendant knew the dog had bitten him.

A minor child may be considered his parent's agent where he performs actions in that respect. *Butler v. Moore*, 125 Ga. App. 435, 436 (3) & (5) (188 SE2d 142) (1972). No direct evidence shows that Jay acted as an agent for his father in taking care of Bad Eye. Where an issue in a civil case rests upon circumstantial evidence, "the testimony must be such as to reasonably establish the theory relied on. There must be more than a 'scintilla' of circumstances to carry the case to the jury." *McCarty v. Nat. &c. Ins. Co.*, 107 Ga. App. 178 (2) (129 SE2d 408) (1962). Approved *Old Colony Ins. Co. v. Dressel*, 220 Ga. 354, 358 (2) (138 SE2d 886) (1964). Although there might be a hint that Jay was his father's agent, " 'inferences must be based on probabilities, not on possibilities.' " *Cohen v. Hartlage*, 179 Ga. App. 847, 851 (348 SE2d 331) (1986). From the evidence elicited, it was at most merely possible that Jay was his father's agent.

Other evidence of knowledge about the dog's vicious tendencies was testimony by Daimian's sister that Wayne, who did not testify at trial, told her he was training Bad Eye to fight for money. He also described how he had trained the dog to hold onto a two-by-four

board with its jaws, that he tormented him with dead chickens, and that he fed the dog irregularly so as to make him "mean." Adam Marlow related that in his presence Bad Eye "popped" a basketball. Although an expert witness for plaintiffs testified that because a dog was trained to fight did not necessarily make him "people aggressive" and that there was no evidence that Bad Eye was particularly trained to be "people aggressive," he did testify that a dog trained to fight would be more likely to bite a human than one not so trained. He also testified that a pit bulldog is a high energy dog and a fighting dog to begin with, and that its restraint by a chain or leash is a great stimulant.

Evidence introduced by plaintiffs as to the size and breed of the dog as well as the fact that it was kept restrained is not of itself availing. *Stanger v. Cato*, 182 Ga. App. 498 (356 SE2d 97) (1987). Accord *Freeman v. Farr*, 184 Ga. App. 830 (363 SE2d 48) (1987) (physical precedent only). "Proof that the owner of the dog either knew or should have known of the dog's propensity to do the particular act which caused injury to the complaining party is indispensable to recovery." *Fitzpatrick v. Henley*, 154 Ga. App. 555 (269 SE2d 60) (1980). As to the need to show more than knowledge of the propensity to do harm in one or more specific ways, it must be knowledge of harm of the type actually inflicted. See *Banks v. Adair*, 148 Ga. App. 254 (251 SE2d 88) (1978); *Penick v. Grimsley*, 130 Ga. App 722 (204 SE2d 510) (1974), and *Carter v. Ide*, 125 Ga. App. 557 (188 SE2d 275) (1972). *Carter* held that knowledge of the propensity to attack other animals is not necessarily notice that the dog will attack humans. Here, however, the naturally-fighting dog was being deliberately trained to be vicious by someone whom the jury could find was defendant's agent. A reasonable inference, at least, could be made that Wayne knew that his training and the demeanor being built into this pit bulldog gave him a dangerous propensity with respect to people, perhaps especially strangers, and not only to boards and dead chickens. He was urging the dog into habits of aggressiveness and attack which common sense says would not be confined to inanimate objects. See 3 Restatement (2d) Torts, § 509, cited in *Carter*, supra at 558.

Defendant's motion for directed verdict and subsequent motion for j.n.o.v. were properly denied.

3. (a) Enumerations of Error 10, 13 and 17 complain of the trial court's instructions to the jury. Although the purported charges are set out, there is no reference to their location in the transcript and no mention of any objection made or where it might be found. This violates Court of Appeals Rule 15 (c) (3) (i) and OCGA § 5-5-24 (a).

(b) Enumeration 12 sets out the instruction, but fails to reference it and fails to show where and if objection was made. Although one page is specifically referred to, there is no objection on that page.

This enumeration also fails. Court of Appeals Rule 15 (c) (3) (i) and OCGA § 5-5-24 (a).

(c) Enumeration 15 sets out the objected to instruction without specifying where in the transcript it may be found and references one page which contains no objection to the charge at issue, only a discussion of whether Daimian could be considered an invitee. This ground is not properly presented for appellate consideration.

Even if it were, defense counsel asked both Daimian and Adam Marlow if the purpose of their visit was to purchase game chickens and received affirmative answers. The invitee issue was applicable to the evidence.

4. (a) Enumeration of Error 3 asserts error in admission of certain testimony contended to be hearsay. At the time the testimony was originally offered, defendant's objection was sustained. *Crane v. Gaddis*, 224 Ga. 804, 805 (1) (164 SE2d 844) (1968). Defendant subsequently cross-examined the witness about that same subject matter and other testimony to the same effect was introduced, all without further objection by defendant. This shows no error. *East Point Ford v. Lingerfelt*, 123 Ga. App. 520, 522 (1b) (181 SE2d 713) (1971).

(b) Enumeration 4 contends the testimony of an expert witness for plaintiffs should not have been admitted. No objection on any ground was interposed to his testimony. *Eiberger v. West*, 165 Ga. App. 559 (1) (301 SE2d 914) (1983).

(c) Enumeration 5 assigns error in the exclusion of a report and the testimony of the witness who prepared that report. It is asserted that this evidence would have shown that plaintiffs made different statements as to what transpired when Daimian Bowen was bitten soon after the incident, as compared with their trial testimony.

The trial court refused to admit the report but offered to let the witness relate what the plaintiffs told him regarding the incident. However, the witness was unable to recall who made the statements which formed the basis of his report. In such circumstances the proffered testimony was hearsay and properly excluded. *Yarbrough v. Cantex Mfg. Co.*, 97 Ga. App. 438, 441 (2) (103 SE2d 138) (1958). See *Mitchell v. State*, 254 Ga. 353, 355 (5a) (329 SE2d 481) (1985); *Coastal Health Svc. v. Rozier*, 176 Ga. App. 240, 241 (3) (335 SE2d 712) (1985).

(d) Enumeration 6 assigns error in the admission of photographs of the dog taken over two years after the incident. At the time they were offered, defendant objected on the lack of foundation and the trial court admitted them conditionally subject to the proper foundation being subsequently laid. Defendant did not follow up on his objection.

"[W]hen evidence is admitted provisionally by the court and the proviso is not met by the opposite party it is incumbent upon the

movant to again call the matter to the attention of the court and invoke a ruling." *Webb v. Biggers*, 71 Ga. App. 90, 92 (2a) (30 SE2d 59) (1944). Accord *Bryan v. Barnett*, 205 Ga. 94, 97 (3) (52 SE2d 613) (1949).

(e) Enumeration 19 sets out that the trial court erred by failing to grant defendant a new trial pursuant to OCGA § 5-1-1, a non-existent Code section. Defendant contends that the trial was prejudiced by improperly admitted evidence, unspecified. Insofar as he attempts to raise an issue as to the cumulative effect of rulings, such argument falls. *Hess Oil &c. Corp. v. Nash*, 226 Ga. 706, 709 (177 SE2d 70) (1970); *Firestone Tire & Rubber Co. v. Pinyan*, 155 Ga. App. 343, 352 (9) (270 SE2d 883) (1980).

5. Enumeration 8 states the trial court erred in failing to grant defendant's motion in limine to exclude any evidence as to his first offender status. Defendant argues that although the court ultimately ruled in his favor, it should have acted more promptly by intervening to prevent the offer of the evidence. The trial court did not rule prior to the offering of the evidence, but it did indicate how it would rule as to the evidence and did promptly so rule when the evidence was actually tendered. Defendant did not insist upon an earlier ruling and cannot complain. See *Taylor v. R.O.A. Motors*, 114 Ga. App. 671, 675 (1) (152 SE2d 631) (1966).

6. Enumeration 16 asserts the trial court erred by refusing to give three of defendant's requests to charge. As to each enumeration of error being confined to essentially one ground, see *MacDonald v. MacDonald*, 156 Ga. App. 565, 566 (1a) (275 SE2d 142) (1980). Nevertheless, these instructions were not relevant to the issues of the case and the trial court correctly refused to give them. *Medoc Corp. v. Keel*, 166 Ga. App. 615, 618 (2) (305 SE2d 134) (1983).

7. (a) Enumeration 9 alleges the trial court erred in allowing cross-examination of defendant about his son's burglary conviction and his association with criminals when the son did not testify.

Plaintiffs sought to impeach defendant by proof of a previous contradictory statement. See OCGA § 24-9-83. They introduced his deposition in which he had responded negatively to the question of whether his son Wayne had been convicted of a felony. Defendant admitted his "response was no at the time." He then answered the question, "Has he been convicted of this burglary charge?" by responding: "He has now, yes." The court admitted the evidence, over objection, stating that because it showed defendant testified that he had not been convicted and "this shows a conviction," it would "be up to the jury to consider the date of the deposition and the date of the conviction." Subsequently, defendant testified on direct examination that his deposition was taken in September 1988 and that his son Wayne was convicted in December 1988. As a change in circum-

stances had occurred between the time of the statement and the trial, the jury could find that the witness was not impeached.

It does not appear that appellant's testimony concerning his son's criminal conviction would have an adverse effect on the jury verdict. This testimony alone does not warrant the reversal of the case.

(b) Enumeration 11 attempts to raise the issue that a charge on impeachment by conviction of a crime involving moral turpitude was error. Defendant points out that the only one impeached by this method was the defendant's absent son. He argues this caused confusion so that the jury might apply the rule to defendant. While agreeing with the argument in theory, we find no ground for reversal on this basis. Defendant objected to a part of the charge on impeachment but not to the principle in question. OCGA § 5-5-24 (a); *A-1 Bonding Svc. v. Hunter*, 125 Ga. App. 173, 182 (186 SE2d 566) (1971) (special concurrence by Judge Deen approved in *Christiansen v. Robertson*, 237 Ga. 711, 712 (229 SE2d 472) (1976)).

*Judgment affirmed. McMurray, P. J., Banke, P. J., Pope and Cooper, JJ., concur. Carley, C. J., Birdsong, Sognier and Beasley, JJ., concur in part and dissent in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

I concur in Divisions 1 through 6 and in Division 7 (b) but respectfully dissent with respect to Division 7 (a).

The evidence in question was not submitted for the purpose of impeaching Wayne and in fact he never testified. OCGA § 24-9-83 refers to impeachment by contradictory statements previously made by a witness as to matters relevant to his testimony and to the case. This is a mandatory requirement and if the alleged contradictory statement is not relevant then the evidence is not admissible. *Grant v. Hart*, 197 Ga. 662, 677 (7) (30 SE2d 271) (1944); *Hudgins v. Bloodworth & Co.*, 109 Ga. 197, 198 (1) (34 SE 364) (1899). Further, it is not competent to ask a witness what he had sworn on a former occasion, with a view to impeach him, if his testimony on that occasion is itself inadmissible in evidence. *Mitchum v. State*, 11 Ga. 615, 635 (8) (1852).

The evidence as to Wayne's conviction was not relevant to the case and was inadmissible as such. See *State v. Rocco*, 259 Ga. 463, 467 (1) (384 SE2d 183) (1989). It did not serve to impeach defendant because it had no materiality or bearing on the issues in the case and because it showed that there was at most an appearance of contradiction. In actuality the pre-trial statement and the true circumstances were compatible and not contradictory. A change in circumstances had occurred between the time of statement and the trial.

Because I cannot determine as a matter of law that the admission of the evidence did not adversely affect the verdict, that evidence be-

ing that Wayne had committed a burglary, I must conclude that it was harmful error since Wayne's role vis-a-vis the dog's disposition was crucial. *White v. Taylor,* 157 Ga. App. 328, 329 (277 SE2d 321) (1981). The judgment should be reversed.

I am authorized to state that Chief Judge Carley, Judge Birdsong and Judge Sognier join in this opinion.

DECIDED JULY 11, 1990 —
REHEARING DENIED JULY 31, 1990 — CERT. APPLIED FOR.

*Chambers, Mabry, McClelland & Brooks, Genevieve L. Frazier,* for appellant.
*Robert A. Falanga, Jesse E. Barrow III,* for appellees.