## A97A0284. BEESON et al. v. CROUCH.
(490 SE2d 118)

RUFFIN, Judge.

Jim Beeson and David Hughes sued Frank Davis, Combustion Labs, Inc. ("CLI"), and Mark Crouch, individually and as trustee for the Davis Family Trust ("the Trust"), for wrongful and fraudulent dissolution of a business venture. The trial court granted summary judgment to Crouch. Beeson and Hughes appeal, and for reasons· which follow, we affirm.

Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. [Cit.]" Id.

Viewing the evidence in this light, the record shows that Frank Davis obtained several patents relating to alternative fuel conversion systems. Davis subsequently transferred ownership of these patents to the Davis Family Trust. The document establishing the Trust named various members of Davis' family as beneficiaries and appointed Mark Crouch as trustee. In February 1991, the Trust entered into an exclusive licensing agreement with CLI, a corporation whose stockholders primarily included Davis' family members and the Trust. Pursuant to the licensing agreement, the Trust granted CLI an exclusive worldwide license to use certain Trust patents "to manufacture, produce, make, market, distribute, use, sell and lease 'licensed articles.' " The agreement provided for termination in the event of a substantial breach of the agreement or expiration of the patents.

In December 1992, Beeson and Hughes talked with Davis about

forming a business venture that would use the Trust patents in the "development, manufacture, marketing and sale of certain fuel conversion systems." According to Beeson and Hughes, Davis represented that he operated his fuel conversion system business through CLI, which had been licensed by the Trust to manufacture, market and sell the conversion systems worldwide. Davis further represented that although he owned no stock in CLI, he controlled the corporation, as well as the Trust.

Hughes testified that Davis "offered Beeson and [Hughes] the opportunity to enter into a business venture for the development, manufacturing, marketing and sale of the 'systems' whereby in consideration for [Beeson and Hughes] advancing funding for the business venture, . . . Beeson would own 28% thereof, [Hughes] would own 28% thereof, Davis, (using the name of the Trust), would own 28% thereof, and the remaining 16% ownership interest in said business venture would be held by the then existing shareholders of CLI. . . ." According to Hughes, the venture was initially to operate as CLI and use CLI's exclusive right to manufacture, market and sell the fuel conversion systems based upon the Trust patents. Beeson and Hughes accepted the offer and agreed to invest $300,000. They contend that from the end of 1992 through most of 1993, they invested over $300,000 in the venture, including an $80,000 initial advance.

Hughes testified that in October or November 1993, Davis informed him that Crouch, as trustee, had cancelled CLI's exclusive licensing agreement and was negotiating a new exclusive agreement with another company for the manufacture, marketing and sale of the combustion systems. Davis further stated that the business venture with Beeson and Hughes had been terminated.

Beeson and Hughes sued Davis, Crouch, and CLI for wrongful termination and dissolution of their business partnership. They later amended their complaint to add claims for misrepresentation, recovery of sums advanced to the venture, unjust enrichment, imposition of a constructive trust, and cancellation of Davis' transfer of patent rights to the Trust. Crouch moved for summary judgment, which the trial court granted. Beeson and Hughes now contend that questions of material fact remain as to Crouch's liability, rendering summary judgment improper. We disagree.

1. On appeal, Beeson and Hughes first argue that they entered into a partnership with the Trust through Crouch. Assuming, without deciding, that the business venture at issue in this case was a "partnership," this claim has no merit. Under the Uniform Partnership Act, a partnership "is an association of two or more persons to carry on as co-owners a business for profit. . . ." OCGA § 14-8-6 (a). Even if Beeson and Hughes entered into such a relationship with

other people or entities, we find no evidence that they engaged in any partnership with Crouch or the Trust.

To support their claim, Beeson and Hughes cite to Beeson's deposition, in which he discussed several conversations he had with Crouch during the venture. According to Beeson, he called Crouch "just to confirm we were new partners, new business venture, what was going on. And [Crouch] welcomed us with open arms. He said [Davis] needed some business help and financial. So we were off to a good start, as I recall." Asked what else was said in the conversation, Beeson testified: "I told you that [Hughes] and I own two thirds, [Davis] one third, [Davis] being the trust."

Beeson and Hughes contend this vague testimony establishes the Trust's participation in the business transaction. A clear reading of Beeson's testimony, however, reveals no statement from Crouch that the Trust had joined the venture. Although Beeson emphasized that Crouch "welcomed [them] with open arms," his testimony provides no insight into whether Crouch welcomed them to (1) a venture that included the Trust; (2) a venture with Davis that would be working with the Trust's patents; or (3) some other venture. In contrast, Crouch affirmatively testified that he, acting either individually or as trustee, never entered into a business venture with Beeson or Hughes.

The record further shows that Beeson and Hughes negotiated the venture with Davis and did not speak to Crouch until *after* it was consummated in late 1992. Beeson and Hughes claim that Davis told them he could act on behalf of the Trust. Yet, they have pointed to no evidence that Davis was in fact authorized to bind the Trust to such venture. According to Beeson, Crouch left him with the impression (but did not affirmatively state) that Davis controlled the Trust. Crouch specifically testified, however, that he never represented to Hughes, Beeson, or anyone else that Davis "was or is authorized to act on my behalf, personally, or on behalf of the Trust."

Beeson's vague deposition testimony is not sufficient to create a factual question as to the Trust's participation in the venture. "In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence, has no probative value against positive and unrebutted evidence that no such facts as sought to be inferred do exist. Although all evidence adduced on motion for summary judgment, including the testimony of [Beeson], must be construed against [Crouch], the testimony of either party is to be most strongly against him where it is self-contradictory, vague or equivocal." (Citations and punctuation omitted.) *Southern Intermodal Logistics v. Smith & Kelly Co.*, 190 Ga. App. 584, 587 (2) (379 SE2d 612) (1989). Beeson's testimony evidences no agreement by Crouch to enter the business venture.

Instead, it establishes only Beeson's *impression* that Crouch and the Trust were part of the venture, which has "no probative value against [Crouch's] unequivocal testimony." Id.

Beeson and Hughes have introduced only vague and equivocal testimony that does not conflict with the positive and direct testimony offered by Crouch. Id. Accordingly, we find that no issues of material fact remain as to the Trust's participation in the venture.

2. We similarly find no evidence that Crouch misrepresented any facts to Beeson and Hughes.

Beeson's deposition testimony provides the primary basis for plaintiffs' misrepresentation claim against Crouch. In particular, Beeson and Hughes claim that Crouch misrepresented to Beeson that Davis controlled the Trust.[1] As discussed above, however, Crouch made no such representation. Although Beeson may have left the conversation with the *impression* that Davis controlled the Trust, he testified as follows at deposition: "Q. Did [Crouch] tell you that he couldn't do anything else without [Davis'] approval? A. Couldn't do anything without [Davis'] approval or the [T]rust, [Davis] ran the [T]rust and [CLI]. Q. And you say that Mark Crouch said that specifically? A. *I can't say Mark Crouch said that specifically, he didn't say they didn't do it. Mark didn't tell me that he had to make the final decision, if that's a roundabout way to answer your question.* . . . But could [Davis] make the decision for the [T]rust and the family, yes, I was told that by [Davis] and *in my opinion confirmed by [Crouch] by his not saying you can't do that.* . . . Q. You told [Crouch] that you understood that [Davis] could make decisions for the [T]rust, is that right? A. Yes. Q. And [Crouch] didn't say anything one way or the other, is that right? A. He welcomed us into the deal. He did not say we couldn't own two thirds, one third, he didn't say the [T]rust had to vote on the stock. Q. But he didn't say they didn't have to either, is that right? A. That's right." (Emphasis supplied.)

We find this evidence insufficient to raise a question of fact in light of Crouch's unequivocal testimony that he never represented that Davis controlled the Trust. *Southern Intermodal Logistics*, supra. The record shows that Crouch never told Beeson that Davis "ran" the Trust or that he had abdicated his authority to Davis. Perhaps Crouch left Beeson with the impression that Davis could make some undefined decisions for the Trust. Beeson and Hughes, however, have pointed to no evidence that Crouch ever represented that Davis *controlled* the Trust, as they now claim.

---

[1] We note, and Beeson and Hughes concede, that Crouch's alleged misrepresentations were made *after* they accepted Davis' offer and advanced funds to the venture. They contend, however, that they continued to invest in the venture in reliance upon Crouch's subsequent statements.

Beeson and Hughes further argue that Crouch misrepresented facts relating to the exclusive licensing agreement. Crouch testified that by letter dated July 2, 1992, he cancelled CLI's rights under the 1991 exclusive licensing agreement because CLI failed to provide required accounting and sales reports to the Trust. Beeson admitted at deposition that he did not discuss the exclusive licensing agreement with Crouch when he spoke with the trustee in early 1993. Beeson and Hughes claim, however, that if Crouch actually cancelled the exclusive agreement before they entered the joint venture, Crouch should have disclosed the cancellation to them.

"Where a person sustains towards another a relation of trust and confidence, his silence when he should speak, or his failure to disclose what he ought to disclose, is as much a fraud in law as an actual affirmative false representation." (Citations and punctuation omitted.) *Arnall, Golden & Gregory v. Health Svc. Centers*, 197 Ga. App. 791, 793 (2) (399 SE2d 565) (1990). According to Beeson and Hughes, they enjoyed such a confidential relationship with the Trust because the Trust formed part of their business venture. As found in Division 1, however, the record presents no evidence that the Trust joined the venture. Beeson and Hughes have pointed to no evidence that Crouch or the Trust owed them a duty to disclose any facts about the 1991 licensing agreement. Accordingly, we find no misrepresentation here.

3. We further find no evidence that Crouch tortiously interfered with Beeson and Hughes' business venture. To establish tortious interference with a business relationship, Beeson and Hughes must show that Crouch " '(1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with [Beeson and Hughes], and (4) for which [Beeson and Hughes] suffered some financial injury.' . . . [Cit.]" *Arford v. Blalock*, 199 Ga. App. 434, 440 (13) (405 SE2d 698) (1991), aff'd sub nom. *Wilensky v. Blalock*, 262 Ga. 95 (414 SE2d 1) (1992). They cannot raise an issue of fact as to the first requirement.

The record shows that after Crouch terminated the 1991 exclusive licensing agreement on July 2, 1992, the Trust and CLI negotiated a new agreement ("the second licensing agreement"). By its terms, the second licensing agreement became effective immediately after Crouch terminated the prior agreement, but was not fully executed in writing until 1993.[2] The second licensing agreement granted CLI a smaller licensing territory than the original "worldwide" agree-

---

[2] The record does not clearly establish when the second licensing agreement was finally executed. Crouch testified that he signed the agreement on behalf of the Trust in November 1992. Although we can find no evidence as to when the agreement was signed by CLI representatives, it is clear that it was executed by the end of August 1993.

ment and also allowed the Trust to terminate CLI's license *"for any reason or for no reason."* (Emphasis supplied.) By letter dated November 1, 1993, Crouch terminated that agreement on behalf of the Trust, apparently in order to negotiate a similar licensing agreement with another company.

We find no improper action by the Trust or Crouch. The Trust, acting through Crouch, was specifically authorized to cancel the second licensing agreement for any or no reason. Citing fiduciary duties of good faith, Beeson and Hughes argue that " '[a] partner may not . . . "freeze out" a co-partner and appropriate the business to his own use.' " *Arford,* supra at 438 (6). As we found in Division 1, however, the Trust was not a partner to the joint venture, and Beeson and Hughes have pointed to no other evidence establishing a fiduciary relationship with the Trust.

Beeson and Hughes also contend that questions of fact remain as to when Crouch actually terminated the 1991 exclusive licensing agreement with CLI. They accuse Crouch of "pre-dating" the termination letter to July 2, 1992, citing as evidence the testimony of CLI's then-president, who did not recall receiving the letter. Beeson and Hughes apparently argue that the 1991 agreement, and its "substantial breach" termination clause, may never have been terminated, leaving Crouch without authority to cancel CLI's license for "any reason or no reason." Crouch, however, testified that he terminated the 1991 agreement by letter on July 2, 1992, and CLI's General Manager testified that CLI received the July 2, 1992 letter.

We find the testimony cited by Beeson and Hughes insufficient to create a question of fact as to when the 1991 licensing agreement was terminated. See *Southern Intermodal Logistics,* supra. The evidence shows that the agreement was terminated by the Trust on July 2, 1992, before Beeson and Hughes entered the business venture at issue in this case.[3]

4. Finally, Beeson and Hughes argue in cursory fashion that Davis conveyed his patents to the Trust in violation of OCGA § 18-2-22. They contend that the conveyance was "fraudulent and must be set aside and a constructive trust imposed on the patents and all proceeds received by the Trust. Crouch, as trustee, is the proper party with respect to these remedies." This claim has no merit.

OCGA § 18-2-22 renders null and void conveyances made to defraud creditors. When a creditor presents the requisite proof for setting aside a conveyance under this Code section, " 'the law conclusively presumes a fraudulent intent and declares the [conveyance]

---

[3] We have not considered, and need not consider for purposes of this appeal, whether the Trust's decision to terminate the 1991 licensing agreement was authorized by the agreement's "substantial breach" clause.

void *so far as creditors who held demands against the debtor at the time of the conveyance are concerned.* (Cit.)' [Cit.]" (Emphasis supplied.) *Barclay v. First Nat. Bank &c.*, 265 Ga. 744 (462 SE2d 374) (1995).

Beeson and Hughes argue that when Davis created the Trust in 1989, he had "severe financial difficulties from judgments, pending litigation and . . . tax liability" and began to improperly transfer patents into the Trust to keep them away from his creditors. Yet, Beeson and Hughes have presented no evidence that they are or have been *creditors* of Davis. The General Assembly defined the relationship between debtor and creditor as follows: "Whenever one person, by contract or by law, is liable and bound to pay to another an amount of money, certain or uncertain, the relation of debtor and creditor exists between them." OCGA § 18-2-1. Beeson and Hughes adamantly deny that the funds they advanced to Davis constituted loans, contending instead that they invested those funds in the venture. Although they now argue through this suit that Davis is indebted to them, their legal claims have not been resolved.

As articulated by the Supreme Court, OCGA § 18-2-22 applies to creditors holding demands against the debtor at the time the allegedly fraudulent conveyance occurred. *Barclay*, supra. Beeson and Hughes do not fit this definition. Furthermore, Beeson testified that he knew Davis had conveyed the patents to the Trust because of the pending judgments. Under these circumstances, Beeson and Hughes can hardly argue that they were defrauded by the patent transfer. Accordingly, the trial court properly granted summary judgment to Crouch on this claim.

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JULY 11, 1997 —
RECONSIDERATION DENIED JULY 25, 1997 — ▮▮▮▮▮▮

*Brown & Brown, George T. Brown, Jr., Alan T. Sorrells*, for appellants.

*Shapiro, Fussell, Wedge, Smotherman & Martin, Robert B. Wedge, Mary L. Hahn, Griffin, Cochrane & Marshall, Melissa S. Harben, Foster & Foster, Donald R. Foster*, for appellee.