A98A0132. HEINSIMER v. WELLINGTON LEISURE PRODUCTS, INC.
(500 SE2d 7)

JOHNSON, Judge.

This case arises from a complex agreement entered into between Wellington Leisure Products, Inc. ("Wellington"), Peter Heinsimer and Daniel Estreich. The record shows that in 1982, Wellington, Heinsimer and Estreich entered into an agreement whereby Heinsimer and Estreich were to market and sell craft products manufactured by Wellington. The proceeds of the sale of the craft products were collected by a company called Maxwell International of Delaware, Inc. ("Maxwell"), which was owned 50 percent by Wellington and 25 percent each by Heinsimer and Estreich. After paying certain expenses, Maxwell paid the remainder to Wellington and an Estreich & Heinsimer partnership, with each receiving 50 percent. The parties continued under this arrangement until 1989, when the IRS audited Maxwell and characterized the payments to the parties as

non-deductible dividends, rather than deductible commissions, as Maxwell claimed in its tax returns. Since using Maxwell as a corporate vehicle to implement the joint venture would double their tax liability, the Estreich & Heinsimer partnership began receiving commissions directly from Wellington.

In a written agreement dated November 22, 1993, Heinsimer agreed to repay Wellington for the tax settlement in installment payments that were to begin in July 1994. Two days before his first payment was due, Heinsimer informed Wellington and others by letter that he wanted to sell his interest in the business and "move on." The letter further stated that Heinsimer and Estreich "have come to the conclusion that it will be impossible to resolve [their] differences in a productive mutually satisfactory way" and that Estreich "started the business over twenty years ago and has a greater desire to continue with it." After viewing a draft of this letter, Estreich made at least one change to make it clear that Heinsimer, and not Estreich, was interested in withdrawing from the agreement and moving on. Heinsimer contends his letter was not meant to be a withdrawal from the agreement with Wellington.

In response to Heinsimer's letter, Frank Carter, the President of Wellington, stopped payment on Estreich & Heinsimer's advance commission check for the first month of the new fiscal year. Carter testified that he wanted to determine the status of the relationship between Heinsimer, Estreich and Wellington prior to advancing any more money to the Estreich & Heinsimer partnership. He was particularly concerned because Heinsimer's letter indicated that Heinsimer and Estreich had been having problems for some time and there was not enough money to support the partnership. Prior to the letter he was unaware of any dispute between the two partners. A notice of the stop payment was sent to the offices of the Estreich & Heinsimer partnership.

Following Heinsimer's announcement that he wanted to "move on" and receipt of the notice stopping payment on the check to the partnership, Estreich wrote a letter to Heinsimer resigning from their partnership. It is undisputed that Wellington officers and employees had no involvement in the termination of the Estreich & Heinsimer partnership and did not know of Estreich's resignation until they received a copy of the letter. Carter testified that the dissolution of the Estreich & Heinsimer partnership concerned him because the partnership was a party to the agreement with Wellington and all commission payments were made by Wellington to the partnership.

Carter and Estreich began negotiations for an agreement whereby Estreich would continue marketing and selling Wellington's products. The undisputed testimony is that no discussions took place

between Wellington and Estreich until after Heinsimer indicated his intention to "move on" and Estreich resigned from the partnership. Wellington made its first offer to Estreich on July 5, 1994, and, after receiving Estreich's reply on July 7, 1994, modified its offer to include terms agreeable to Estreich. An agreement was entered into on July 11, 1994, but was dated July 1, 1994, as that was the beginning of the new fiscal year. Other than receiving a letter from Estreich on July 8, 1994, indicating Estreich was accepting an offer from Wellington, Heinsimer did not speak with Estreich regarding Estreich's negotiations or agreement with Wellington.

Wellington filed suit against Heinsimer and Estreich to recover unearned commissions advanced to Heinsimer and Estreich and for breach of promise to repay the funds loaned by Wellington to pay for the tax settlement. The complaint alleged five counts: (1) money had and received, (2) breach of promise to pay, (3) assumpsit, (4) breach of contract, and (5) bad faith. The claims against Estreich were dismissed when Estreich agreed to pay the amounts due. Heinsimer answered and asserted six counterclaims against Wellington: (1) breach of fiduciary duties, (2) "wrongful dissolution of joint venture," (3) accounting of commissions and profits, (4) and (5) contribution and indemnification from Estreich, and (6) "breach of majority stockholder's duty of fair and equitable treatment of minority shareholders."

Wellington moved for summary judgment on Counts 1 and 2 of its five-count complaint against Heinsimer and on Counts 1, 2 and 6 of Heinsimer's counterclaim against it. The trial court denied Wellington's motion for summary judgment as to Count 1 of its complaint, involving money had and received, granted Wellington's motion for summary judgment as to Count 2 of its complaint, involving the breach of promise to pay, and granted Wellington's motion for summary judgment as to Counts 1, 2 and 6 of Heinsimer's counterclaim, involving breach of fiduciary duty, wrongful dissolution of joint venture and breach of majority stockholder's duty of fair and equitable treatment of minority shareholders. Heinsimer only appeals the grant of summary judgment on his counterclaims for "wrongful dissolution of joint venture" and "breach of majority stockholder's duty of fair and equitable treatment of minority shareholders." For the reasons discussed below, we affirm.

Summary judgment is appropriate when the court, viewing all evidence and drawing all inferences in a light most favorable for the nonmovant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be

discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." Id.

1. Heinsimer argues the trial court erred in granting Wellington's motion for summary judgment on his counterclaim for "wrongful dissolution of a joint venture." He alleges Wellington and Estreich conspired to "freeze him out" of the joint venture to sell Wellington products. However, Heinsimer cites no evidence proving that Wellington and Estreich conspired to exclude him from the venture, but rather offers inferences from circumstantial evidence, which he contends the jury could believe and, therefore, find in his favor. It is well-established that "[a]n inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." (Citation and punctuation omitted.) *Green v. Sams*, 209 Ga. App. 491, 498 (1) (433 SE2d 678) (1993). Moreover, in determining whether to grant a motion for summary judgment, a finding of fact which may be inferred, but is not demanded, by circumstantial evidence has no probative value against positive and unrebutted evidence that no such facts as sought to be inferred exist. See *Beeson v. Crouch*, 227 Ga. App. 578, 580 (1) (490 SE2d 118) (1997). Although all evidence adduced on motion for summary judgment, including the testimony of Heinsimer, must be construed against Wellington, the testimony of either party is to be most strongly against him where it is self-contradictory, vague or equivocal. Id.

Even accepting Heinsimer's version that his letter was not meant to be a termination letter but was merely a letter notifying Wellington of his desire to sell his stock and leave the joint venture in the future, Heinsimer's letter precipitated Estreich's withdrawal from the Estreich & Heinsimer partnership. Dissolution of the Estreich & Heinsimer partnership directly affected the joint venture because the partnership was a party to the agreement with Wellington and all commission payments were made by Wellington to the partnership.

Contrary to Heinsimer's claim that he was frozen out, the undisputed evidence is that after the dissolution of the Estreich & Heinsimer partnership, Wellington offered Heinsimer the same terms to continue marketing its products as those offered to Estreich, but Heinsimer refused the offer. Furthermore, there is no evidence indicating that Wellington officers and employees had any involvement in the termination of the Estreich & Heinsimer partnership or had any knowledge of Estreich's letter until they received a copy. The

undisputed evidence further shows that no discussions took place between Wellington and Estreich until after Heinsimer indicated his intention to "move on" and Estreich subsequently resigned from the partnership.

Heinsimer fails to point to any evidence showing that Wellington and Estreich conspired to exclude him from the joint venture. His attempt to draw negative inferences from documents and actions when undisputed evidence shows these inferences were incorrect does not create material issues of fact. The trial court did not err in granting Wellington's motion for summary judgment as to this count of Heinsimer's counterclaim.

2. Heinsimer also alleges the trial court erred in granting Wellington's motion for summary judgment as to his counterclaim that Wellington "breached its duties of fair and equitable treatment of a minority shareholder." Again, this claim is based on Heinsimer's assertion that Wellington, a majority stockholder in Maxwell, breached its duty of fair and equitable treatment to Heinsimer, a minority stockholder, by freezing Maxwell out of the joint venture and by competing with Maxwell. It should be noted that the trial court's order on this particular issue does not preclude Heinsimer from seeking a fair and equitable price for his Maxwell stock.

Even if Wellington can be deemed a majority shareholder with only a 50 percent interest in Maxwell, which we need not determine for purposes of resolving this enumeration of error, Heinsimer failed to introduce any evidence that he was not given fair and equitable treatment. As discussed in Division 1, it is undisputed that Estreich resigned from the Estreich & Heinsimer partnership without the direction or prior knowledge of Wellington. Because the partnership was a party to the joint venture and Wellington paid Estreich and Heinsimer through the partnership, Wellington negotiated a new agreement with Estreich to insure that Estreich would continue selling Wellington products. Heinsimer was offered the same deal, but refused it. The trial court did not err in granting Wellington's motion for summary judgment regarding this count of Heinsimer's counterclaim.

*Judgment affirmed. Birdsong, P. J., and Smith, J., concur.*

DECIDED MARCH 11, 1998 —
RECONSIDERATION DENIED MARCH 25, 1998.

*Strauss & Walker, John T. Strauss*, for appellant.
*Long, Aldridge & Norman, Barry J. Armstrong, Phillip A. Brad-*

*ley, Lambros & Lambros, Michael G. Lambros, Alexander & Royston, James B. Alexander*, for appellee.