A99A0338. THURMOND v. SAFFO et al.
(520 SE2d 43)

BARNES, Judge.

Pennie Reid sued Waymond and Shirley Saffo for injuries she received as a result of being bitten by the Saffos' German Shepherd-Chow mixed breed dog, Rocky. C. Brooks Thurmond, trustee of the bankrupt estate of Pennie Reid, appeals from the trial court's grant of a directed verdict in favor of the defendant. Because we find this case is controlled by our recent decision in *Supan v. Griffin*, 238 Ga. App. 404 (519 SE2d 22), we reverse.

A trial court should grant a motion for directed verdict "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a). When determining whether any conflict in the evidence exists, the trial court "must construe the evidence most favorably to the party opposing the motion for directed verdict." *Southern R. Co. v. Lawson*, 256 Ga. 798, 799 (1) (a) (353 SE2d 491) (1987). "The standard used to review the grant or denial of a directed verdict is the 'any evidence' test. [Cit.]" *Skelton v. Skelton*, 251 Ga. 631, 633 (4) (308 SE2d 838) (1983).

Viewed in this light, the evidence at trial showed that Reid knew Rocky from the time he was a puppy and had never had any trouble with him until the day he bit her. The Saffos kept Rocky in the garage tied to a post with a long chain. At the time of the incident, Rocky was a year and a half old, and Reid was walking through the garage toward the door which allowed entry into the den of the Saffos' house. This was the usual manner that Reid entered the Saffos' home, and she would visit the Saffos three or four times a week.

Reid testified that when she entered the garage on the day of the incident,

> Rocky was laying [sic] down. And I looked over at him, and he looked at me. And the fire that was in his eyes was red. It was like a devil's look. And he was getting up slowly and was

growling. And I said: Rocky, what's the matter. You know me. It's Pennie. And he just rushed at me. And by the time I got ready to turn around, his front tooth went in my leg from the top. . . . And as I turned around to walk away, my — the pressure that was on me, I fell back on my wrist and shattered the bones in my wrist.

During cross-examination, Reid admitted that she had never known Rocky to bite, attack, or chase anyone.

The only evidence of a previous incident with Rocky came from the testimony of Brenda Webb and Eula May Smith. Webb testified that when she walked into the garage a week before Reid's incident, Rocky walked slowly toward her and barked. He did not growl or snap at her. Because she believed the dog was going to attack her based on "[h]is eyes and tail," she jumped over Mrs. Saffo's car and went down the driveway. Webb explained that she has always been afraid of big dogs like Rocky and that she jumped over the car so the dog would not have the opportunity to bite or attack her. Webb denied repeatedly that Rocky actually attacked her that day. Finally, Webb testified that, before Reid's encounter with Rocky, she told both Mr. and Mrs. Saffo that Rocky had barked at her and she thought that he was going to attack her. According to Webb, Mrs. Saffo then "went outside and got on to [Rocky]."

Reid's mother, Smith, testified that she talked with Webb at the hospital after her daughter was injured. According to Smith, Webb told her that Rocky "was a bad dog because he had jumped at her. And she run [sic] and jumped up on top of the car. And then she turned around and jumped inside to keep him from getting her."

This case is controlled by our recent decision in *Supan v. Griffin,* supra. In *Supan,* a case involving a bite on the owner's premises, we held that the true test of liability is the owner's "superior knowledge of his dog's temperament." In this case, the jury could reasonably infer from the evidence that, but for Webb's evasive maneuver over the Saffos' car, Rocky would have bitten her just as he did Reid. Since the Saffos knew that Rocky had tried to attack another person and had scolded him for this behavior, the jury in this case should have been allowed to determine whether the Saffos should have anticipated the subsequent successful attack on Reid. Likewise, the jury should have also been allowed to determine whether the Saffos carelessly managed the dog by failing to warn visitors, such as Reid, about Rocky's behavior or take other action to prevent visitors from being attacked. See OCGA § 51-2-7.

*Judgment reversed. Senior Appellate Judge Harold R. Banke concurs. Blackburn, P. J., concurs specially.*

BLACKBURN, Presiding Judge, concurring specially.

While I agree with the judgment reached by the majority, I cannot agree with the analysis used to reach it, and therefore, I specially concur.

The evidence shows that as Reid entered the garage on the day of the attack, Rocky started growling and suddenly rushed at her. Rocky bit Reid's leg, causing her to fall and break her wrist. Reid testified that, prior to the attack, Rocky's eyes were red and he had a "devil's look." During Rocky's prior attack, Webb testified that Rocky viciously approached her as she entered the garage. However, Rocky was not able to bite her because she jumped over one of the Saffos' cars and barely escaped injury. Webb testified that, at time of the incident, she could tell from Rocky's eyes and tail that he was preparing to attack her. Webb told Shirley Saffo, her sister, and Waymond Saffo, her brother-in-law, about Rocky's attack upon her. Viewing all evidence in favor of Thurmond, the question is, does Webb's testimony establish that the defendants had knowledge that Rocky had a propensity to attack and bite persons visiting the premises?

In Georgia, a dog owner is liable for damages only if he has knowledge that his dog has the "propensity to do the particular act which caused injury to the complaining party." (Punctuation omitted.) *Smith v. Culver*, 172 Ga. App. 183 (322 SE2d 294) (1984).

> The owner need not be aware of the dog's propensity to do the exact same act that caused the injury in issue, but in order to infer the requisite knowledge there must be at least one incident that would cause a prudent person to anticipate the actual incident that caused the injury.

*Durham v. Mooney*, 234 Ga. App. 772, 773 (1) (507 SE2d 877) (1998). In applying the first bite rule, two determinations must be made: (1) whether the dog has the propensity to do the act which caused the injury, and (2) if so, whether the dog's owner had knowledge of the propensity. *Rowlette v. Paul*, 219 Ga. App. 597 (466 SE2d 37) (1995).

> With regard to the first prong, this Court consistently has held that the dog must have, on a prior occasion, done the same act which resulted in the injury comprising the tort action. *Johnson v. Kvasny*, 230 Ga. App. 162 (495 SE2d 651) (1998); *Rowlette*, supra; *Smith*, supra; *Banks v. Adair*, 148 Ga. App. 254 (251 SE2d 88) (1978); *Carter v. Ide*, 125 Ga. App. 557 (2) (188 SE2d 275) (1972). Thus, where a dog was known to chase people, but had never chased a car or motorcycle, the owner had no knowledge that the dog might chase a motorcyclist causing him to wreck. *McNair v. Jones*, 137

Ga. App. 13, 14 (2) (223 SE2d 27) (1975). But, summary judgment granted to the dog owner was reversed where the dog was known to chase people and the plaintiff was injured when she fell while being chased by the dog. *Evans-Watson v. Reese*, 188 Ga. App. 292 (372 SE2d 675) (1988). Likewise, where a dog had on several occasions grabbed or nipped people, or ripped their clothes without actually biting, there was sufficient evidence to support a verdict which found the owner should have had knowledge of the dog's propensity to bite. *Torrance v. Brennan*, 209 Ga. App. 65, 67 (2) (432 SE2d 658) (1993).

*Hamilton v. Walker*, 235 Ga. App. 635-636 (510 SE2d 120) (1998).

In this case, the similarity between Rocky's attacks on Webb and Reid is striking. Based on Webb's testimony that Rocky threatened to bite her, it is reasonable to infer that, but for Webb's evasive maneuver over the Saffos' car, Rocky would have bitten her just as he did Reid. As such, the jury in this case should have been allowed to determine whether the attack on Webb was sufficient to support a finding that the Saffos should have anticipated the subsequent successful attack on Reid. *Marshall v. Person*, 176 Ga. App. 542, 543 (336 SE2d 380) (1985).

We do not address the opinion in *Supan v. Griffin*, 238 Ga. App. 404 (519 SE2d 22), as, under a long line of cases, Georgia courts have applied a first bite rule which requires an analysis of the comparable conduct of the animal. Because the present case falls within such holdings, we need not address or rely upon *Supan*, supra.

Here, the only reason that Rocky had not actually bitten anyone before he bit Reid was because his prior victim had been quick enough to avoid the attack. A prospective victim's successful thwarting of a dog's attack should not absolutely immunize the dog's owners from suit when a second, similar attack results in the victim being bitten.

DECIDED JUNE 25, 1999.

*Setliff & Hammonds, Carter A. Setliff, William G. Hammonds,* for appellant.

*Shur, McDuffie, Brockman & Leveille, Reynolds E. Pitts, Jr., Goodman, McGuffey, Aust & Lindsey, James F. Cook, Jr.,* for appellees.